# Mann *v.* Salsberg.

*Contracts—Conflict of laws—Evidence.*

In the absence of evidence that a contract was to be executed, or was executed outside the state of Pennsylvania, the transaction is governed by the law of Pennsylvania.

*Sale—Insolvency—Rescission—Maryland contract.*

The rule of the Maryland law that a purchaser who buys goods knowing his insolvency and having no reasonable expectation of paying for the goods purchased, takes a title voidable at the election of the vendor, does not apply where the evidence establishes that the vendees were indebted at the time of the purchase, and that judgment was sometimes subsequently entered against them; but it fails to give any satisfactory information as to their assets at that time, and such light as it does throw on that point seems to indicate that the value of the stock of goods then in their store exceeded by a considerable amount the total indebtedness.

Where a purchaser has been imposed upon by an actual fraud and misrepresentation, the contract is voidable at the election of the vendor, upon discovery of the fraud. He must rescind promptly upon the discovery, or a conclusive presumption of ratification will arise, but he is not put to his election until he knows, or ought to have known, of the fraud. The right of rescission will not avail when the goods have passed into the hands of an innocent purchaser for value, without notice of the fraud, nor against the execution of a creditor whose debt was contracted, by the fraudulent purchaser, subsequently to his possession under this title. The rescission must be evidenced by some unequivocal act, and the vendor must return whatever he has received under the contract, retaining out of the money that has been paid the value of any goods which may have passed beyond his power to reclaim.

When nothing has been paid on the contract and the goods have been levied upon by the sheriff at the suit of another creditor, notice to the sheriff and joining in an interpleader to try the title to the property is a sufficiently explicit declaration of the intention to rescind. As against a creditor whose debt was in existence at the time the debtor fraudulently obtained possession of the property, the vendor may; if not estopped upon other grounds, assert his right to rescind after the goods have been levied upon.

*Interpleader—Sheriff's interpleader—Act of May 26, 1897, P. L. 95.*

Where claimants in a proceeding under the interpleader Act of May 26, 1897, P. L. 95, give a bond and take the goods, the value of the goods must be determined by the verdict of a jury. When the verdict is larger in amount than the claim of the defendant in the issue, the execution creditor, the court will so mould the verdict and the judgment as to prevent the injustice of giving the creditor more than the amount of his claim.

Argued Jan. 16, 1901. Appeal, No. 2, Jan. T., 1901, by plaintiffs, from judgment of C. P. Luzerne Co., Dec. T., 1898, No. 254, on verdict for defendants in case of Henry Mann & Son v. David Salsberg et al. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Sheriff's interpleader to determine the ownership to certain goods.

The court charged as follows:

This is a question of law to be decided by the court rather than by the jury. The court will briefly state the reasons.

I. Rosenthal & Son were merchants in this city in 1898. As far as the case shows, their line of business was furnishing goods such as coats, vests,—things of that character. The evidence here tends to show that Rosenthal & Son were indebted about August 17, 1898, in the neighborhood of $8,000. According to Lewis Rosenthal's testimony, their stock at that time was worth about $12,000 ; it increased in value and the debts by October 1 were about $13,000. About the last of August, Mr. Waterman, traveling salesman for Mann & Son, took an order in this city from Rosenthal & Son for the goods named in the declaration in this issue, which were delivered about October 1. There is no question as to their delivery, value, or being of the same kind and make. Along in the early part of October, judgment had been entered in this court against I. Rosenthal & Son and execution thereon was issued and placed in the hands of the sheriff, and on October 12 upon this execution the sheriff levied on the property belonging to Rosenthal & Son, the defendants in the writ, and advertised for sale. On the 15th, three days later, the sheriff was given notice the goods mentioned in the case we are now trying were not the goods of Rosenthal & Son but belonged to the seller, Mann & Company, and had been secured by Rosenthal & Son from Mann & Company by fraud and deceit ; and for that reason it is claimed that the title and right of the property in them did not pass to Rosenthal, but remained in Mann & Company, of Baltimore.

It is a well recognized rule of law in this state, that fraud, such as trick and deceit, or misrepresentation made by the buyer, causing the seller to part with his goods, may permit him to

rescind the bargain and take back the goods. In other words, fraud vitiates the contract and it is no sale. In Maryland, where it is claimed this contract was made—because the order was simply given here and the contract filled in Baltimore, Maryland, the goods being there, then put in the custody of a common carrier, which generally means a delivery—the law is not quite as stringent as it is here. In Maryland, according to the book read here and offered in evidence, which is the only proof in the case of the law of Maryland, the law is that when the buyer is insolvent and knows it, and buys without hope or intention of being able to pay, that may constitute fraud. But these questions do not arise now. I state them merely that counsel may have the benefit of the reason of the decision of the court. [The decision is based upon this principle of law. As I stated, the sheriff by virtue of the execution issued against Rosenthal & Son made a levy upon this property on October 12, which put the possession, and for certain purposes the title, of the property levied upon in the custody of the law, and gave the judgment creditor in the execution certain rights. Mr. Salsberg, the defendant here, was the judgment creditor. At the time he caused the execution to be issued and placed in the hands of the sheriff, and at the time the levy was made, neither he nor, so far as the case shows, the sheriff, had any knowledge of the contract which it is now claimed was rescinded, was fraudulent. There had been no attempt, so far as appears here, to rescind the contract; the goods were in the possession and custody of Rosenthal & Son, the sheriff had the right to make the levy, and Rosenthal & Son had and now have the legal right to claim they belonged to them, notice not having been given of a rescinding of the sale. In other words, after a man by virtue of a process of law, through the sheriff, has a grip upon the property, has it in his custody, it is too late for the seller to say, I rescind that contract and want the goods back. There is good reason for that. If a seller could do that, it would give him two chances; he would say, I will let the sale stand if it suits me; if there is danger of my debtor losing his property by another creditor, I will rescind the contract and claim the goods back. In other words, it would give him the goods no matter what happened. It would be unfair in morals, and I presume it is on that prin-

280, (1901).]　　Charge of Court—Opinion of the Court.

ciple the law is based.　Therefore the court instructs you to return a verdict in favor of the defendant.] [1]

Verdict and judgment for defendants.　Plaintiff appealed.

*Errors assigned* were (1) portion of charge as above, quoting it.　(2, 3) In giving binding instructions for defendant.

*E. F. McGovern*, with him *D. C. Harrower*, for appellant, cited: Benesch v. Weil, 69 Md. 276 ; Perlman v. Sartorius, 162 Pa. 320 ; Cincinnati Cooperage Co., v. Gaul, 170 Pa. 545 ; Renninger v. Spatz, 128 Pa. 524 ; Creps v. Dunham, 69 Pa. 456 ; Kitchen v. McCloskey, 150 Pa. 376 ; Schwartz v. McCloskey, 156 Pa. 258 ; Stevens v. Brennan, 79 N. Y. 254.

*J. T. Lenahans*, of *Lenahans & Lynch*, for appellee, cited: Wessels v. Weiss Bros., 156 Pa. 592 ; Labe & Son v. Bremer's Sons, 167 Pa. 15 ; Penna. Knitting Mills Co. v. Bibb Mfg. Co., 12 Pa. Superior Ct. 346 ; Boginski v. Tobolski, 21 Pa. C. C. R. 531 ; Keen v. Hopkins, 48 Pa. 445.

OPINION BY W. D. PORTER, J., May 23, 1901:

The sheriff of Luzerne county having levied upon certain goods in the store of Rosenthal & Son, in the city of Wilkes-Barre, under executions against that firm issued at the suit of the present defendants, the plaintiffs claimed the goods and this issue was framed to determine the validity of that claim. The evidence failed to make it clear that the sale by the plaintiffs to Rosenthal & Son was a Maryland contract.　The goods were manufactured in the state of Maryland, but we have no definite information as to where they were at the time of the sale.　The evidence indicates a probability that the merchandise was transported from Baltimore to Wilkes-Barre by a common carrier, some unnamed railroad company, but for anything that appears in the case the vendors may have been consignees as well as shippers, and may have delivered the goods at Wilkes-Barre.　In the absence of evidence that the contract was to be executed, or was executed, outside the state of Pennsylvania, the transaction was governed by our own laws.　There was no sufficient evidence of any misrepresentation, trick or device, practiced by the purchasers at the time of the sale, which would

warrant the vendor in rescinding the contract upon discovering the fraud. The plaintiffs asserted that this contract was executed by delivery of the goods to the purchaser in the state of Maryland, that under the law of that state, a purchaser who buys goods knowing his insolvency, and having no reasonable expectation of paying for the goods purchased, takes a title voidable at the election of the vendor. If it be conceded that the law of the state of Maryland is as alleged, yet the plaintiffs were bound to prove such facts as would justify a finding of insolvency, or they had no case to submit to the jury: Labe & Son v. Bremer's Sons, 167 Pa. 15. A careful consideration of the evidence has failed to convince us that it comes up to the standard required; it established that Rosenthal & Son were indebted at the time of the purchase, and that judgment was some time subsequently entered against them, but it failed to give any satisfactory information as to their assets at that time, and such light as it did throw on that point seemed to indicate that the value of the stock of goods then in their store exceeded by a considerable amount the total indebtedness. In this view of the case the court was justified in giving binding instructions in favor of the defendants, but as the case must go back for retrial, we are constrained to declare our dissent from the views expressed by the learned judge of the court below in that portion of the charge embraced by the first assignment of error. If the goods were delivered, at Baltimore, to a common carrier and consigned to the purchasers, this was a Maryland contract, and the rights of the parties thereunder are to be determined in accordance with the laws of that state. The burden is upon the plaintiffs to prove by competent evidence the law of Maryland upon the subject-matter, and facts which under that law are held to be sufficient evidence of fraud to justify a vendor in rescinding a contract of sale and reclaiming his goods. If these things are established the plaintiffs stand upon the same footing, touching the right of rescission, with a vendor who has been imposed upon by actual fraud and misrepresentation in a Pennsylvania contract. When in either case the right of rescission is established, the incidents of the right and the manner of its exercise are the same in both: Lowrey v. Ulmer, 1 Pa. Superior Ct. 425; Perlman v. Sartorius, 162 Pa. 320. In cases of this character the contract is voidable at the election of the

vendor, upon discovery of the fraud. He must rescind promptly upon the discovery, or a conclusive presumption of ratification will arise, but he is not put to his election until he knows, or ought to have known, of the fraud. The right of rescission will not avail when the goods have passed into the hands of an innocent purchaser for value, without notice of the fraud, nor against the execution of a creditor whose debt was contracted, by the fraudulent purchaser, subsequently to his possession under this title. The rescission must be evidenced by some unequivocal act, and the vendor must return whatever he has received under the contract, retaining out of the money that has been paid the value of any goods which may have passed beyond his power to reclaim. It is not, however, absolutely necessary that personal notice shall be given to the fraudulent purchaser, if proceedings be taken which necessarily involve notice to all parties in interest. The purpose of the rule which requires that the rescission be prompt and that it be evidenced in some unequivocal manner, is that parties may not be led into a course of action founded upon a belief that the contract has been affirmed. When nothing has been paid on the contract and the goods have been levied upon by the sheriff at the suit of another creditor, notice to the sheriff and joining in an interpleader to try the title to the property is a sufficiently explicit declaration of the intention to rescind. As against a creditor whose debt was in existence at the time the debtor fraudulently obtained possession of the property, the vendor may, if not estopped upon other grounds, assert his right to rescind after the goods have been levied upon . Kitchen v. McCloskey, 150 Pa. 376; Wessels v. Weiss Bros., 156 Pa. 591; Schwartz v. McCloskey, 156 Pa. 258; Levy v. Cooke, 143 Pa. 607.

The claimants in this proceeding, the appellants, having given a bond and taken the goods, the provisions of the Act of May 26, 1897, P. L. 95, clearly required that the value of the goods should be determined by the verdict of the.jury. The appraised value of goods is by the statute made prima facie evidence of the real value, " but at the trial the real value thereof may be shown to be more or less than the appraised value, and a verdict and judgment may be rendered against the claimant up to the value of said goods and chattels as so proven." When said verdict is larger in amount than the claim of the defendant in

the issue, the execution creditor, the court will so mould the verdict and judgment as to prevent the injustice of giving the creditor more than the amount of his claim: Penna. Knitting Mills Company v. Bibb Manufacturing Company, 12 Pa. Superior Ct. 346. It was the purpose of the act of assembly to provide a complete and convenient system for determining controversies of this character, without circuity of action. The 13th section of the act contains this provision : " If, however, said goods and chattels have been taken by the claimant, a verdict and judgment for the value thereof shall be entered against the claimant and in favor of the defendant in the issue." There must be a verdict in order to sustain a judgment for the value of the goods. The jury not having passed upon the value of the goods in this case, the second specification of error must be sustained.

The judgment is reversed and a venire facias de novo awarded.