**In re EMERY CORPORATION t/a Hugh Nelson Carpet Mills, Debtor.**

**LAVONIA MANUFACTURING COMPANY, Plaintiff,**

v.

**EMERY CORPORATION, t/a Hugh Nelson Carpet Mills, Defendant.**

**Bankruptcy No. 83–00900G. Adv. No. 83–2017G.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 19, 1984.

Barry A. Brown, Strong, Barnett, Hayes & Hamilton, Philadelphia, Pa., for plaintiff, Lavonia Manufacturing Co.

Morton Newman, Andrew D. Bershad, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for defendant, Emery Corp. t/a Hugh Nelson Carpet Mills.

Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for the creditors' committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The basis of the dispute at bench is whether a seller's right of reclamation un-

der § 2702[1] of the Uniform Commercial Code ("the UCC") of Pennsylvania is precluded by the existence of a creditor holding a security interest in the debtor's after-acquired property. For the reasons stated herein we find that the seller may reclaim the goods.

The facts of this case are as follows:[2] Lavonia Manufacturing Company ("Lavonia") executed security agreements with several creditors which agreements were duly perfected prior to February 24, 1983. At all times pertinent to this action these secured creditors were owed in excess of $10,490.24. Lavonia delivered on credit $10,490.24 worth of yarn to the debtor on March 1, 1983. Two days later the debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code. The debtor received a letter from Lavonia which demanded the return of the yarn.

We will commence our discussion in the abstract with an historical review of the common-law antecedents of the issues underlying the dispute at bench. At common law a seller of goods who failed to receive payment at or after delivery of the goods to the purchaser had a right of reclamation under certain circumstances. A distinction was drawn between credit sales and cash sales based on the theory that one selling on credit had voluntarily subjected himself to greater risk in dealing with the purchaser than an individual selling for cash. The consequences of this theoretical distinction became manifest in the application of the "void-voidable" transaction doctrine. A buyer who obtained goods in a cash sale without payment of the purchase price, usually through the use of a check subsequently dishonored, obtained no title to the goods. His title was void rather than voidable. The seller could reclaim the goods merely upon the failure of payment. The seller who delivered goods on credit had a more restricted right of reclamation. Generally, a purchaser's failure to comply with the credit terms of the arrangement gave the seller nothing more than the rights of a general unsecured creditor with no right of reclamation. But if the buyer purchased goods on credit while insolvent, knowing that he would be unable to pay for them, he committed a fraud on the seller. The purchaser's title to the goods was voidable and the seller could reclaim the goods upon establishing the existence of the fraud.[3]

The UCC preserves in modified form a creditor's right of reclamation although the drafters of the statute dispensed with the requirement of proving fraud for the sake of simplicity and uniformity. *In Re PFA Farmers Market Assoc.*, 583 F.2d 992, 994 n. (8th Cir.1978). As to credit sellers, this change expanded the right of reclamation. *Id.* at 1000. Hereafter we shall deal exclusively with sales on credit under § 2702 which is outlined below in pertinent part.[4]

---

**1.** 13 Pa.Cons.Stat. § 2702. Hereafter all references to the Pennsylvania UCC will be designated by the unhyphenated format which has been adopted by the legislature. For all other jurisdictions the citations have been modified to conform to the hyphenated format used in the text promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws.

**2.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**3.** Wallach, *The Law of Sales Under the Uniform Commercial Code* ¶ 7.03 (1981).

**4.** Pennsylvania's current version of § 2702 states as follows:

§ 2702. Remedies of seller on discovery of insolvency of buyer

(a) * * *

(b) Reclamation of goods on credit.— Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(c) Limitations on right of reclamation.— The right of the seller to reclaim under subsection (b) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this division (section 2403). Successful reclamation of goods excludes all other remedies with respect to them.

Under the former bankruptcy statute,—the Bankruptcy Act of 1898,—the applicability of the right of reclamation against a debtor in possession or a trustee in bankruptcy was uncertain. With the passage of the Code in 1978, the trustee's ability to restrict a seller's right of reclamation was circumscribed through § 546 of that statute which is outlined below in relevant part.[5] The legislative history of § 546 indicates that, as "under nonbankruptcy law, the right [of reclamation] is subject to any superior rights of secured creditors.[6] The purpose of the provision is to recognize, in part, the validity of section 2-702 of the Uniform Commercial Code, which has generated much litigation, confusion, and divergent decisions in different circuits." S.Rep. No. 95–989, 95th Cong., 2d Sess. 86–87 (1978), *reprinted* in 1978 U.S.Code Cong. & Ad.News 5787, 5872–73. Generally a debtor in possession has virtually all the powers of a trustee and is subject to the same limitations as a trustee, such as those found in § 546. 11 U.S.C. § 1107(a).

In adjudicating a request under § 2702 the cases typically adhere to the following procedures; Initially it must be determined if the seller has established a prima facie case for relief under § 2702(b) by proving that the debtor is insolvent and that the seller has timely provided notice of his intent to reclaim the goods. Secondly, upon proof of the prima facie case, it is necessary to determine, as to the goods in question, the existence of (i) a buyer in the ordinary course of business or (ii) another good faith purchaser or (iii) a lien creditor. Thirdly, if any of these entities is present in a case it must be decided whether the UCC establishes the relative rights of such an individual vis-a-vis the reclaiming seller. And finally, if the UCC does not determine the relative rights of the parties a review of other pertinent sources of state law is required for identifying those rights for comparison with the rights of the reclamation claimant.

The parties in the case at bench do not dispute that the seller has a prima facie right of reclamation under § 2702(b) since the goods were delivered to the debtor when it was insolvent and since the debtor received the notice of reclamation within the requisite ten day period. The first issue stems from the meaning of the limitation provisions of § 2702(c) as to whether a creditor with a security interest in the debtor's after-acquired property is a "good faith purchaser" who, by that status, cuts off the seller's right to reclaim his goods.[7]

---

Section 2702(c) had been amended and ultimately became effective 180 days after its passage on November 26, 1982. Consequently, our decision must be predicated on the former provision expressed below, which was in effect when the alleged right of reclamation was asserted:

(c) Limitations on right of reclamation.— The right of the seller to reclaim under subsection (b) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this division (section 2403). Successful reclamation of goods excludes all other remedies with respect to them.

The amendment in 1982 deleted the phrase "or lien creditor" which followed the expression "good faith purchaser."

5. § 546. Limitations on avoiding powers
  (a) * * *
  (b) * * *
  (c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or commonlaw right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—
    (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and
    (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—
    (A) grants the claim of such a seller priority as an administrative expense; or
    (B) secures such claim by a lien.

6. This reference to secured creditors creates no new rights for such parties but merely establishes that their rights are assertable in a reclamation action.

7. In this case the debtor is resisting the reclamation demand by asserting the rights of third parties, who are not involved in this litigation, but who have a security interest in the debtor's after-acquired property. The reclamation creditor has not objected to the debtor's derivative use of the third parties' status, and thus we will not deal with that issue.

The debtor contends that under § 2702(c) the holder of a security interest is a "purchaser" within the meaning of § 1201 of the UCC which states in part as follows:

§ 1201.  General definitions

Subject to additional definitions contained in the subsequent provisions of this title which are applicable to specific provisions of this title, the following words and phrases when used in this title shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

"Purchase."  Includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property.

"Purchaser."  A person who takes by purchase.

The debtor then relies on § 2403(d) which states that the "rights of other purchasers of goods and of lien creditors are governed by ... Division 9 (relating to secured transactions)."  The debtor concludes that the reclamation creditor's rights are subordinate to the rights of the secured creditor under § 9312(e)(2), which states that, "[s]o long as conflicting security interests are unperfected, the first to attach has priority."

Although the debtor's theory is supported by notable authority we find it flawed on two bases, the first of which is the debtor's conclusion that the term "purchaser" in § 2702 includes a secured creditor who obtained his security interest *prior* to the seller's delivery of the goods.  The pertinent question is, when must the interest of the buyer, purchaser or lien creditor first arise for these interests to defeat the rights of a reclaiming creditor.

■ We believe the debtor's reliance on the terms "purchase" and "purchaser" as found in § 1201 is misplaced.  As stated in the lead sentence of this section the words defined therein "shall have, *unless the con-*

*text clearly indicates otherwise*, the meanings given to them in this section."  (Emphasis added).  The definitions found in § 1201 are generally applicable to the remainder of the UCC and not merely Article 2, and thus an occasional variation between the definition of a term in § 1201 and the meaning of a word intended by the drafters of the UCC for use in a particular substantive provision is not unexpected.  The fact that § 2403, to which § 2702(c) expressly refers, indicates that the debtor received the goods in question with only *voidable* title, raises the implication that the debtor's title to the goods was not void *ab initio*, and that the debtor's title to the goods was voidable for at least some period of time.  This right to void the seller's title would continue until the earlier of the running of the ten day period[8] or until the right to void title was exercised, i.e., until the debtor did some affirmative act of election *after* the delivery of the goods to divest the reclamation creditor of title.  Further support that the definitions of § 1201 do not mesh properly with § 2702(c) is that a "purchase" under § 1201 "[i]ncludes taking by ... lien ... ," while § 2702(c) states that a creditors right of reclamation is subject to the rights of "lien creditors."  If the definitions of "purchase" and "purchaser" in § 1201 are adopted for use in § 2702 then the statute is redundant.  There are two references to a "lien" where only one is needed.  To harmonize logically the various provisions of the UCC, the definitions of "purchase" and "purchaser" in § 1202 cannot be intended for application in § 2702.  In light of the spirit and purpose of § 2702(c) as well as the express language of that section, we find that the term "purchaser" in § 2702(c) includes a secured creditor only to the extent that such creditor gives value to the debtor and receives a security interest thereon after the delivery of the goods and prior to the demand for reclamation.

---

**8.** Although § 2702 contains two time limitations, ten days and three months, the former period is applicable in this case.  For the sake of clarity in this discussion, when we refer to the ten day period we shall deem such reference to include the three month period as well, where such inclusion is appropriate.

■ Since § 2702 is largely a codification of the common law, such common law is persuasive in establishing the meaning of § 2702(c). In credit sales the common law of reclamation, which below is denominated as rescission, has been described as follows:

> In cases of this character the contract is voidable at the election of the vendor, upon discovery of the fraud. He must rescind promptly upon the discovery, or a conclusive presumption of ratification will arise, but he is not put to his election until he knows, or ought to have known, of the fraud. The right of rescission will not avail when the goods have passed into the hands of an innocent purchaser for value, without notice of the fraud, nor against the execution of a creditor whose debt was contracted, by the fraudulent purchaser, subsequently to his possession under this title. * * * As against a creditor whose debt was in existence at the time the debtor fraudulently obtained possession of the property, the vendor may, if not estopped upon other grounds, assert his right to rescind after the goods have been levied upon.

*Mann v. Salsberg*, 17 Pa.Super. 280, 284–85 (1901). As stated in *Mann*, a creditor who holds a preexisting debt at the time the goods are sold, has no ability to terminate a seller's right of reclamation although it can be precluded if the debt is incurred and the security interest granted after the goods are delivered to the debtor. In light of *Mann*, our interpretation of the term "purchaser" in § 2702(c) comports well with its common law antecedent.

■ Although the debtor's request for denial of the reclamation claim is without merit on the first issue under the above stated holding, we continue with the debtor's argument in order to enunciate alternate holdings. As stated above, the debtor relies on § 2403, to which § 2702 refers, which states that the "rights of other purchasers of goods and of lien creditors are governed by ... Division 9 (relating to secured transactions)." § 2403(d). The debtor claims that the rights of a reclamation creditor are subordinate to the rights of a secured creditor under § 9312(e), which states that "so long as conflicting security interests are unperfected, the first to attach has priority." By its language § 9312(e) is applicable only in a contest between competing security interests. We are aware of no provision of the UCC which states that a creditor's right to reclaim goods is, or should be deemed, a security interest. In essence, § 2702(b) is but one manifestation of the equitable right of rescission. On the creditor's reclamation of the goods, the parties are returned to the same relative positions they occupied before the transaction occurred. More particularly, a reclamation creditor has no Article 9 security interest in the goods unless there was an intent to create a security interest and that intent was committed to a signed agreement. § 9203(a)(1) and § 9102(a). In the case at issue, there is no proof of either of these elements and thus there is no Article 9 security interest. As stated in *PFA Farmers Market Assoc.*, 583 F.2d 992, 998 (8th Cir.1978) (Footnote omitted):

> It is widely felt, however, that a right to rescind under § 2–702 is distinguishable from a security interest. See Braucher, supra at 1290; Kennedy, *The Interest of a Reclaiming Seller under Article 2 of the Code*, 30 Bus.Law. 883, 835–36 (1975). Cf. *Guy Martin Buick, Inc. v. Colorado Springs National Bank*, 184 Colo. 166, 519 P.2d 354 (1974) (§ 2–507(2) is "a right to undo the transaction, not a right to 'secure' payment of the price as required by the definition of a 'security interest'"). Sellers have never understood their reclamation right to be a security interest. R. Duesenberg & L. King, *supra*, § 13.03[4][d][ii] at pp. 13–29—13–32. While § 9–113 indicates that some security interests are created as a matter of law by Article 2, we find nothing in § 9–113 or its Official Comment to indicate that the § 2–702(2) right was classified as a security interest. With some uncertainty, we agree with *In re Mel Golde Shoes, supra* [403 F.2d 658] at

660, that § 2–702(2) creates something other than a security interest.

The third official comments to § 2702 of the UCC also indicates that this section does not, as a matter of law, give a reclamation creditor the status of a secured creditor. In part, the comment states as follows:

> Moreover, since Section 2–403(4) incorporates by reference rights given to other purchasers and to lien creditors by Articles 6, 7 and 9, such rights have the same priority. "Lien creditor" here has the same meaning as in Section 9–301(3). Thus *if* a seller retains an unperfected security interest, subordinate under Section 9–301(1)(b) to the rights of a levying creditor of the buyer, his right of reclamation under this section is also subject to the creditor's rights.

The presence of the term "if" in the third sentence of the quoted material raises the implication that only in select circumstances will the reclamation creditor have a security interest. He will not be deemed to have one as a matter of law in every instance. Thus, under § 2–702 a reclaiming

creditor does not hold an unperfected security interest and consequently Article 9, particularly § 9302, does not provide a method for determining the priority between a reclaiming creditor and a secured creditor. *Johnston & Murphy Shoes, Inc. v. Meinhard Commercial Corp. (In Re Mel Golde Shoes, Inc.),* 403 F.2d 658 (6th Cir. (1968).

The debtor cites *Stowers v. Mahon (In Re Samuels & Co., Inc.)* [9] and several other cases [10] for the proposition that a reclamation seller has, as a matter of law, a security interest in the goods he delivered. In our view these cases completely fail to provide any coherent basis to support the proposition. The bulk of the cases provide no rationale for their holdings other than a reference to *Samuels.*

At this juncture two alternatives are theoretically possible. The first is that we establish that the reference to "purchasers" in § 2702(c) directs that the rights of those individuals be found exclusively under Article 2 or in sections of the UCC to which Article 2 refers, such as § 2403. Un-

---

**9.** The debtor's position is supported by several cases, the most notable of which is *Stowers v. Mahon (In Re Samuels & Co., Inc.),* 483 F.2d 557 (5th Cir.1973), reversed and remanded by 416 U.S. 100, 94 S.Ct. 1626, 40 L.Ed.2d 79, reconsidered at 510 F.2d 139 (5th Cir.1975) (Godbold dissenting), reheard en banc at 526 F.2d 1238 (5th Cir.1976) (Godbold's former dissent adopted as majority opinion of split court). In *Samuels* individuals who sold cattle to the debtor were denied the right to reclaim them under § 2–702 for three reasons: (1) they failed to comply with the ten day time limitation of § 2–702(2); (2) the right of reclamation does not apply to proceeds of goods; and (3) the claimants in the debtor's estate who hold security agreements with after-acquired property clauses were purchases under § 2–702(3) who take priority over the reclaiming creditors' "unperfected security interests." We agree with the first and second statements advanced by the court but differ with the third, which is discussed here. In *Samuels* the court relies on §§ 2–401 and 9–113 with only meager explanation and concludes that no intent is needed to create a security interest. 526 F.2d 1246–47. Under § 2–401(1) a security interest is created upon the seller's attempt to retain title of goods sold. In the case at bench the parties have drawn no references in their briefs to such a

retention of interest. A security interest exists under § 9–113 only if it arises solely under Article 2, however the court fails to indicate where under Article 2 this security interest has been created. 526 F.2d 1246–47. Furthermore, a security interest under § 9–113 is perfected without the filing of a financing statement § 9–113(b).

**10.** *E.g., Petroleum Specialties, Inc. v. McLouth Steel Corp. (In Re McLouth Steel Corp.),* 22 B.R. 722 (Bkrtcy.E.D.Mich.1982); *Western Farmers Assoc. v. Ciba Geigy (In Re Western Farmers Assoc.),* 6 B.R. 432 (Bkrtcy.W.D.Wash.1980).

The debtor also relies on county court case from this state, *King Foods v. Erie Farms,* 21 D. & C.3d 434 (Erie Co.1981). Although the case supports the debtor's position it does so without independent analysis but merely through reliance on Samuels and similar cases. The United States Supreme Court has stated that a case such as this, which is without statewide precedent, is only entitled to "some weight" but is "not controlling" on the federal courts. *King v. Order of United Commercial Travelers of America,* 333 U.S. 153, 160–161, 68 S.Ct. 488, 492–493, 92 L.Ed. 608 (1948) (construing *Erie Railroad Co. v. Tompkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and the Rules of Decision Act currently found at 28 U.S.C. § 1652).

der this approach § 2702(c) necessarily displaces state law in this area. The second option is that § 2702 has not displaced such law and thus we must turn to non-UCC law for our decision.

In reviewing the latter alternative first, the law in Pennsylvania appears to be that a seller's right of reclamation is subject to secured creditors and lien holders who extended credit *after* the delivery of the goods but *prior* to the seller's notice of intent to reclaim. *In Re Kravitz*, 278 F.2d 820, 822–23 (3d Cir.1960); *Mann*, 17 Pa.Super. 280, 285. This result is logical since the only creditors who are prejudiced by the reclamation are those who extended credit to the debtor in reliance on their right to seek recourse against the delivered goods in the event of the debtor's default.

The first alternative is that § 2702 displaced state law. As we stated above the fact that seller's right to reclaim is voidable under § 2403, which necessarily implies that at some time after delivery of the goods the seller must have been able to divest the debtor of title to the goods if the requirements of § 2702(b) are met. Section § 2702(b) and (c) connote that the reclamation period begins to run with the delivery of the goods and terminates on the earlier of the passage of the ten day period or some event triggered by a buyer in the ordinary course, a good faith purchaser or a lien creditor. The only reasonable triggering event which could occur after delivery under the facts of this case is the issuance of credit and the receipt of a security interest. Thus, the result obtained without resort to non-UCC law is the same as that found in the UCC. We hold that the legislature, for the purpose of simplifying commercial law and securing uniformity among the various jurisdictions subscribing to the UCC, codified the common law of reclamation in this jurisdiction to the exclusion of prior law. *PFA*, *supra*, 583 F.2d 1000 (with the passage of § 2–702 of the Missouri UCC, the legislature intended

displacement of the common law of reclamation.)[11]

In summary, we find that the debtor's analysis is flawed for two reasons. First, we hold that a creditor who advances credit and obtains a security interest prior to the seller's delivery of goods is not a purchaser within the meaning of § 2702. Second, we hold that § 2702 has displaced state law, which holds that a claimant who obtains a security interest prior to the seller's delivery of goods does not have priority under the UCC against the reclaiming creditor. Had we not found that § 2702 displaced non-UCC state law, then our result would not have changed since state common law grants the reclaiming seller the same rights over a secured creditor as § 2702.

---

**11.** We do not find this result precluded by *Kravitz, supra,* 278 F.2d at 922, n. 3, since the parties in that case apparently did not advance the analysis presented in the case at bench.